IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PENNSYLVANIA NATIONAL MUTUAL  \*
CASUALTY INSURANCE COMPANY,

          Plaintiff,                                   \*

          v.                                        \*                  Civ. No. JKB-23-02746

GENERALI–U.S. BRANCH D/B/A THE
GENERAL INSURANCE COMPANY OF   \*
TRIESTE & VENICE–U.S. BRANCH,

          Defendant.                            \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM AND ORDER

Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") has brought this action for declaratory judgment, breach of contract, and subrogation against Generali–U.S. Branch d/b/a The General Insurance Company of Trieste & Venice–U.S. Branch ("Generali"). (ECF No. 1.) The action stems from a dispute between the parties over their respective insurance payout responsibilities associated with an accident in 2018 in which several individuals sustained injuries at a short-term rental residence. Pending before the Court is Defendant's Motion to Vacate Order of Default. (ECF No. 19.) The Motion is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court will grant the Motion.

### I.    Background

Taylor&Refosco, LLC, Chad Taylor, Joe Refosco, and Jodi Taylor-Refosco (collectively, the "Taylor Parties") managed a rental property in McHenry, Maryland. (ECF No. 1 at 3.) The property was listed for rent on the website of a short-term rental marketplace affiliated with Homeaway Holdings. Inc, d/b/a VRBO ("HHI"). (*Id.*) In 2018, renters at the property sustained

injuries after falling off an allegedly negligently maintained deck. (*Id.* at 3–4.) The renters subsequently sued the Taylor Parties, and Penn National provided a defense, as a subrogee and assignee of the Taylor Parties under a general liability insurance policy. (*Id.*) That lawsuit was eventually settled in 2022, and Penn National contributed $3.985 million to the settlement. (*Id.*) Generali, meanwhile, provided insurance to HHI to benefit HHI property managers and owners for injuries sustained by renters at HHI properties, for up to $1 million per incident. (*Id.* at 6–8.)

Penn National alleges that the Generali policy was primary to its policy and that, as such, Generali was obligated to defend and indemnify the Taylor Parties before Penn National's obligations were triggered. (*Id.* at 12.) Penn National contends that Generali's failure to contribute to the Taylor Party's defense violated the terms of Generali's insurance policy, and the terms of a 2020 agreement between Generali and Penn National to share in the costs of defending the Taylor Parties. (*Id.* at 8–15.)

Penn National filed its Complaint in October 2023, and the summons was served on the Maryland Insurance Commissioner on November 7, 2023. (ECF No. 14.) On January 18, 2024, after Generali failed to file a timely response, the Clerk entered an Order of Default. (ECF No. 17.) Generali was notified that it had 30 days from January 18 to move to vacate the Order. (ECF No. 18.) Generali filed the instant Motion on February 20, 2024. (ECF No. 19.)

## II.     Legal Standard

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause." In deciding whether good cause exists, the Court must consider:

> [1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic.

*Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006).

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Prep. Academy, Inc. v. Hoover Universal, Inc.* 616 F.3d 413, 418 (4th Cir. 2010). This is also the policy of this Court. *See Parrish v. Leithman*, Civ. No. JKB-23-0342, 2023 WL 7632070, at *1 (D. Md. Nov. 14, 2023) (expressing the Court's "preference to resolve cases on the merits [and] to avoid procedural defaults whenever possible" (alteration in original) (quotation omitted)). As a result, motions to set aside a default are "liberally construed in order to provide relief from the onerous consequences of defaults[.]" *Colleton*, 616 F.3d at 421 (quotation omitted).

### III.    Analysis

Turning to the first *Payne* factor, the burden on the party asserting a meritorious defense is "not onerous." *Commodity Futures Trading Comm'n v. Jali*, Civ. No. PJM-20-2492, 2024 WL 249159, at *3 (D. Md. Jan. 23, 2024) (quotation omitted). "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party in the underlying action." *Dominion Fin. Servs., LLC v. Pavlovsky*, Civ. No. JKB-22-00705, 2022 WL 4631072, at *4 (D. Md. Sept. 30, 2022) (alteration in original) (quoting *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)).

In its Motion, Generali argues that it contributed a "substantial sum" toward settling the underlying tort lawsuit, and that under the terms of its insurance policy, any payments toward the defense costs would have been offset by a reduced contribution toward the settlement, meaning that Penn National is not entitled to any additional recovery from Generali. (ECF No. 19 at 5–7.) Penn National disagrees, arguing that Generali's actions likely caused the settlement to be higher than it would otherwise have been, to Penn National's detriment. (ECF No. 20 at 5–6.)

At this procedural posture, with scant briefing and a limited record, the Court is disinclined to wade into the depths of the underlying factual dispute between the parties. It is enough for the Court to observe that, if Generali's account is true, it may have a meritorious defense to at least some of Penn National's claims. This satisfies the first *Payne* factor.[1]

As to the second factor, the parties agree that Generali filed its Motion on the day it was due. Filings are presumptively timely if made within the deadline set by the Court, at least when there is no evidence of a larger pattern of delay. Accordingly, the Court finds that the second *Payne* factor favors Generali.[2]

Turning to the third factor, so long as "the defaulting party offers a rational explanation for the default . . . the Court will excuse the delay of answer unless the defaulting party acted in bad faith." *Kihn v. Vavala*, Civ. No. 8:18-02619-PX, 2019 WL 2492350, at *2 (D. Md. June 14, 2019). Here, Generali contends that it only learned of this lawsuit on February 5, 2024, when it received the Notice of Default. (ECF No. 19 at 6.) Generali explains that the summons and Complaint were served on the Maryland Insurance Administration ("MIA")—in accordance with Maryland law—but that the MIA failed to forward the papers to Generali's designated agent for receipt of service. (*Id.* at 7; Lorenz Aff. at ¶¶3–12, ECF No. 19-3 at 2–3.) Generali argues that it was not at

---

[1] Even if Generali's defenses go merely to the amount of damages rather than the question of liability, it would still satisfy the meritorious defense inquiry. *See Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 719 (D. Md. 2001) ("The Fourth Circuit has found that a meritorious defense may exist even when the allegations 'address the amount, rather than the propriety, of [the] claim.'" (alteration in original) (quoting *Augusta Firberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988))).

[2] Penn National argues that Generali was not reasonably prompt because it learned of this action on February 5, 2024, but did not retain counsel until February 16. (ECF No. 20 at 6.) Penn National does not provide any facts or caselaw to explain why this 11-day delay was unreasonable under the circumstances. Penn National also points to the fact that Generali's motion was filed at 5:48 p.m. on February 20, 2024, the day the Motion was due. (*Id.*) Penn National states that "[t]he Court's hours of operation are from 9 a.m. to 4 p.m., so this motion was filed after hours on the day it was due." (*Id.*) This argument does not follow. The Court did not set a deadline for what hour the motion was due, and the parties cannot set such a deadline unilaterally. In any event, the Court does not see how the Clerk's Office's hours of operations, *see* Local Rule 504.1 (D. Md. 2023), has any bearing on whether a filing is timely, given the availability of 24/7 electronic filing, as well as an "after hours" box for paper filings located on the first floor of the courthouse, *see id.* 504.2. It would be an abuse of this Court's discretion to deny this Motion on such tenuous grounds.

fault for this failure, as it had recently provided the MIA with its current New York City mailing address. (Exhibit 3 to Exhibit B, ECF No. 19-3 at 11 (showing that Generali provided the MIA with its current mailing address in December 2022); Exhibit 4 to Exhibit B, ECF No. 19-3 at 14 (showing that Generali's change-of-address form had been received by the state of Maryland).) Although the exact reason why it never received the papers is unknown, Generali posits that there was likely a clerical error on the MIA's part. (ECF No. 19-3 at ¶7.)

Penn National counters by asserting that Generali's designated agent for service of process was not properly registered with the Maryland State Department of Assessment and Taxation ("SDAT"). (ECF No. 20 at 4.) Generali disputes the relevance of this point. (ECF No. 24 at 4–5.) But even assuming that Generali was partially at fault for failing to ensure entirely accurate records, there is no evidence that any omission on Generali's part (assuming there was any omission) "was motivated by any intent . . . to disregard or derail the legal process." *Makowske v. Lincoln Life Assurance Co. of Bos.*, Civ. No. 21-01439-SAG, 2021 WL 3288365, at *2 (D. Md. Aug. 2, 2021) (granting a motion to vacate default when the defendant insurance company established that it had up-to-date records with the MIA even though its contact information with SDAT may not have been accurate). Thus, this factor weighs in favor of granting the Motion.

Next, the Court considers prejudice. "In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party." *Colleton*, 616 F.3d at 418. Penn National makes a conclusory allegation of prejudice but can point to no concrete harms other than the costs "of filing various motions as well as this opposition." (ECF No. 20 at 7.) But legal costs are an expected, unavoidable part of the litigation process. Furthermore, there is no indication in the record that the relatively brief delay associated with the default and the instant Motion will work any actual harm to Penn National. *See Quarles*

*v. Wells Fargo Bank, N.A.*, Civ. No. GJH-20-3200, 2022 WL 952025, at *6 (D. Md. Mar. 30, 2022) ("Where there is a brief delay in the adversarial process, courts will generally find that there is no prejudice to plaintiff." (quotation omitted)). This factor therefore weighs in Generali's favor.

As for the fifth *Payne* factor, there is no evidence of a history of dilatory action on Generali's behalf. Penn National does not argue otherwise.

Finally, considering the sixth *Payne* factor, the Court finds no need for any sanctions in this case at this time. That said, Penn National has proposed as a lesser sanction to default that Generali be precluded from filing any Motion to Dismiss and instead be directed to file an Answer. (ECF No. 20 at 7.) Generali has acceded to this suggestion, and does not oppose being directed to file an Answer within 10 days of the entry of this Memorandum and Order. (*See* ECF No. 24 at 10.) Although the Court does not find that sanctions are warranted, because the parties agree that Generali will file an Answer rather than a Motion to Dismiss, the Court's Order will reflect this agreement between the parties.

IV. **Conclusion**

For the foregoing reasons, it is ORDERED that Defendant's Motion to Vacate Order of Default (ECF No. 19) is GRANTED. Accordingly, the Order of Default (ECF No. 17) is VACATED. Defendant SHALL FILE an Answer within 10 days of the date of this Memorandum and Order.

DATED this __19__ day of March, 2024.

BY THE COURT:

*/s/ James K. Bredar*
James K. Bredar
Chief Judge