IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PENNSYLVANIA NATIONAL MUTUAL      *
CASUALTY INSURANCE COMPANY,
                                  *
    Plaintiff,
                                  *
v.                                              Civ. No. JKB-23-02746

GENERALI–U.S. BRANCH D/B/A THE
GENERAL INSURANCE COMPANY OF      *
TRIESTE & VENICE–U.S. BRANCH,

    Defendant.                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

In this insurance coverage dispute, Defendant Generali–U.S. Branch has moved for summary judgment against Plaintiff Pennsylvania National Mutual Casualty Insurance Company. (ECF No. 64.) The Court finds the briefing on the Motion inadequate, insofar as both parties ignore a line of cases that appears to be crucial to the resolution of the case. Before the Court resolves Generali's Motion, it requires additional briefing from the parties.

To begin, two preliminary notes.

*First*, when sitting in diversity, a federal court applies the choice-of-law rules of the state in which in sits—here, Maryland. *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013). "In insurance contract disputes, Maryland follows the principle of *lex loci contractus*, which applies the law of the jurisdiction where the contract was made." *Id.* A contract is deemed "made" where the last act necessary for the contract to become a binding agreement is performed. *Id.*

Generali makes the following assertions regarding choice of law:

> The Generali Policy was issued to HHI at an address in Texas, the Generali Policy directs the insured to the Texas Department of Insurance for complaint procedures, and the Generali Policy contains Texas specific endorsements, so Texas law governs the interpretation of the Generali Policy. The Penn National Policy was issued to T&R at an address in Maryland and contains several Maryland specific endorsements, so Maryland law governs the interpretation of the Penn National Policy. There [are] no conflicts of law regarding the issues presented in this case, so we look to all available law as appropriate.

(ECF No. 64 at 16 n.22.)

Penn National does not dispute these arguments or discuss choice of law at all in its response brief. That means it has forfeited the issue, at least for this stage of the litigation. *See Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 781–82 (4th Cir. 2023) (holding that a party waives choice of law by failing to object to the application of another state's law, and that it is error for the district court to dispose of a case on those grounds *sua sponte*). Accordingly, the Court accepts that Texas law governs the Generali Policy and that Maryland law governs the Penn National Policy.

*Second*, the Court will analyze together Counts I, II, and IV (collectively, the "Generali Policy Claims") because Counts I and IV are essentially duplicative of the core breach-of-contract claim in Count II. (*See* ECF No. 1 ¶¶ 39–59.) Count I is brought as a claim for declaratory judgment, but the Declaratory Judgment Act authorizes a remedy; it does not create a right of action. *EnviroAnalytics Grp. LLC v. AXIS Surplus Ins. Co.*, ___ F. Supp. 3d ___, Civ. No. JKB-24-2970, 2025 WL 1475447, at *6 (D. Md. May 22, 2025). For that reason, it is not appropriately brought as a standalone claim. *See id.* As for Count IV, subrogation is simply a legal theory permitting a party to assert the rights of another; it is not a freestanding source of liability. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. John Zink Co.*, 972 S.W.2d 839, 843–44 (Tex. App. 1998) ("An insurer's right to subrogation derives from the rights of the insured, and is limited to those rights; there can be no subrogation where the insured has no cause of action against the

defendant."). So, both Counts I and IV rise and fall with Count II.

Now, to the heart of the matter. Any analysis as to whether Generali is entitled to summary judgment as to the Generali Policy Claims would be incomplete without a discussion of the leading Texas case on the question of when an insurer, acting as subrogee of an insured, may recover against a co-insurer who shirks its obligations under its policy. *See generally Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765 (Tex. 2007). There is just one problem—neither party so much as cites to *Mid–Continent*, or any of the cases following it.

Generali's basic argument is that the limits of its eroding policy were exhausted by the settlement of the underlying tort action; that its duty to defend terminated upon exhaustion; that Taylor & Refosco, LLC ("T&R"), Chad Taylor, Joe Refosco, and Jodi Taylor Refosco (collectively, the "Taylor Parties") received a complete defense in any event; and that Penn National, suing as subrogee of the Taylor Parties, cannot recover over and above the policy limit. This argument has force. *See N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 559 (5th Cir. 2008) (applying Texas law and concluding that "if the eroding policy limits are $10,000, and the insurer pays $10,000 in reasonable defense fees, the policy limits for that occurrence are exhausted"); *United Servs. Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 784 (Tex. App. 1991), *writ denied* (Oct. 23, 1991) (providing that, in general, "damages in a contract claim for the wrongful failure to defend do not include damages in excess of the policy limits"). And, at least at first blush, *Mid–Continent* seems to favor Generali. *See* 236 S.W.3d at 774–76 ("Having fully recovered its loss, an insured has no contractual rights that a co-insurer may assert against another co-insurer in subrogation.").

But the world of Texas insurance law is not so simple. A "majority of courts" (or, at least, a majority of federal courts applying Texas law), "have cabined *Mid–Continent* to its facts."

3

*Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 306 (5th Cir. 2010). Indeed, later decisions interpreting *Mid–Continent* suggest that an insurer that breaches its duty to defend may, in certain instances, be liable in subrogation to a co-insurer even if the insured received a complete defense. *See Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 85–88 (5th Cir. 2012); *Urb. Oaks Builders LLC v. Gemini Ins. Co.*, Civ. No. 4:19-4211, 2024 WL 3489184, at *4–5 (S.D. Tex. July 19, 2024). *But see Truck Ins. Exch. v. Mid-Continent Cas. Co.*, 320 S.W.3d 613, 622 (Tex. App. 2010).

It is by no means obvious which of Penn National or Generali is aided more by the *Mid–Continent* line of cases. But it is clear that these cases are too important simply to ignore, as the parties have done here. The Court strongly suspects that these cases hold the key to the resolution of this case. Without further briefing, however, the Court knows not whether that key opens the door to victory for Generali or for Penn National.

It is always perilous for a court to venture past the point where the parties have taken it. In our adversarial system, it is the role of the parties, not the Court, to advance legal arguments. *See Arizona v. California*, 530 U.S. 392, 412–13 (2000). So, rather than attempt, *sua sponte*, to resolve the weighty issues implicated by *Mid–Continent*, the Court will direct the parties to file additional briefing on the following questions: (1) Do *Mid–Continent* and subsequent cases permit Penn National—in its capacity as subrogee of the Taylor Parties—to recover defense costs from Generali in the circumstances of this case? (2) If so, how should such costs be allocated?

The additional briefs must proceed on the assumptions that (1) Texas law applies to the dispute and (2) Generali and Penn National were co-primary insurers at least with respect to T&R. The Court expects this briefing to be limited solely to the question of subrogation, notwithstanding *Mid–Continent*'s or other cases' discussion of other types of claims, like contribution. *See, e.g.,*

4

236 S.W.3d at 772. Finally, the additional briefing should not contain any argument concerning Count III; the Court considers Generali's Motion as to that claim fully briefed.

Accordingly, it is ORDERED that:

1. On or before Friday, July 18, 2025, each party SHALL FILE a supplemental brief, no more than fifteen pages in length, addressing the above questions.
2. Response briefs, no more than ten pages in length, shall be due on or before Friday, July 25, 2025.
3. There shall be no reply briefs.
4. For the purposes of this supplemental briefing, the parties must accept the Court's findings and conclusions contained in this Memorandum and Order. In so doing, they will not be deemed to waive any appellate or other rights.

DATED this __3__ day of July, 2025.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
United States District Judge